IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT BECKLEY

| | | |
|---|---|---|
| **TOM HARRAH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO. 5:04-0632** |
| | ) | |
| **JO ANNE B. BARNHART,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. By Standing Order, this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' Cross-Motions for Judgment on the Pleadings.

The Plaintiff, Tom Harrah (hereinafter referred to as "Claimant"), filed an application for SSI on March 11, 2003 (protective filing date), alleging disability as of March 9, 1999, due to liver disease, a deteriorating disc in the lower back, pinched nerves in both arms, bad ankle, and numbness in the fingers. (Tr. at 54-57, 37, 43.) The claims were denied initially and upon reconsideration. (Tr. at 37-39, 43-44.) On November 24, 2003, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 45.) The hearing was held on March 19, 2004 before the Honorable John T. Yeary. (Tr. at 170-202.) By decision dated April 8, 2004, the ALJ

determined that Claimant was not entitled to benefits. (Tr. at 8-21.) The ALJ's decision became the final decision of the Commissioner on May 12, 2004, when the Appeals Council denied Claimant's request for review. (Tr. at 3-5.) On June 22, 2004, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2004). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether

the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2004). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 12.) Under the second inquiry, the ALJ found that Claimant suffered from the severe impairments of liver disease, back strain, left knee meniscus tear, and alcoholism. (Tr. at 14.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 14.) The ALJ then found that Claimant had a residual functional capacity to perform light work with additional limitations, including an at will sit/stand option; only occasionally performing postural activities; no concentrated exposure to extreme cold, extreme heat, humidity, noise, vibration, and hazards; and experienced mild to moderate pain but could be attentive to and carry out assigned work tasks. (Tr. at 17.) The ALJ therefore determined that Claimant could not perform his past relevant work. (Tr. at 17.) Nonetheless, the ALJ determined, on the basis of Vocational Expert testimony, that Claimant could perform light and sedentary jobs such as gate guard (light), file clerk (light), mail room clerk (light); surveillance system monitor (sedentary); dispatcher (sedentary); and hand packer (sedentary). (Tr. at 19.) On this basis, benefits were denied. (Tr. at 19-21.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on May 8, 1965, and was 38 years old at the time of the administrative hearing. (Tr. at 55.) Claimant completed the eleventh grade. (Tr. at 71.) In the past, he worked as a dishwasher, cook, and laborer. (Tr. at 77.)

The Medical Record

The Court has reviewed all evidence of record, including the medical evidence, and will discuss it below as it relates to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in failing to give "great weight" to the opinions and residual functional capacity assessments of treating physicians Dr. Curtis and Dr. Doyle.  The Commissioner asserts that this argument is without merit and that the decision is supported by substantial evidence.

Treating Physicians' Opinions and RFC Assessments

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability.  See 20 C.F.R. § 404.1527(d)(2) (2004).  Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. § 404.1527(d)(2) (2004).  The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits.  20 C.F.R. §§ 404.1527(d)(2) (2004).  Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  As noted above, however, the court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1994).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. § 404.1527.  These factors include: (1) Length of the treatment

5

relationship and frequency of evaluation, (2) Nature and extent of the treatment relationship, (3) Supportability, (4) Consistency, (5) Specialization, and (6) various other factors. Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. § 404.1527(d)(2).

Under § 404.1527(d)(1), more weight is given to an examiner than to a non-examiner. Section 404.1527(d)(2) provides that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Section 404.1527(d)(2)(i) states that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under § 404.1527(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Section 404.1527(d)(3), (4), and (5) adds the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty).

Opinions on a claimant's Residual Functional Capacity are issues that are reserved to the Commissioner. The Regulations state that:

> We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to [this] subpart . . . , your residual functional capacity . . . or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner.

See 20 C.F.R. §§ 416.927 (e)(2); 404.1527(e) (2004). The Regulations state that opinions on these

issues are not medical opinions as described in the Regulation dealing with opinion evidence (20 C.F.R. §§ 404.1527(a)(2); 416.927(a)(2)); rather, they are opinions on issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e). For that reason, the Regulations make clear that "[w]e will not give any special significance to the source of an opinion on issues reserved to the Commissioner . . . ." Id. §§ 404.1527(e)(3), 416.927(e)(3). The regulations further provide that "[f]or cases at the Administrative Law Judge hearing or Appeals Council level, the responsibility for deciding your residual functional capacity rests with the Administrative Law Judge or Appeals Council." See 20 C.F.R. §§ 416.946, 404.1546 (2004.) However, the adjudicator must still apply the applicable factors in 20 C.F.R. §§ 404.1527(d) and 416.927(d) when evaluating the opinions of medical sources on issues reserved to the Commissioner. See Social Security Ruling ("SSR") 96-5p, 61 FR 34471, 34473 (1996).

      Social Security Ruling 96-5p makes a distinction between an RFC assessment, which is "the adjudicator's ultimate finding of 'what you can still do despite your limitations,'" and a "medical source statement," which is a "'statement about what you can still do despite your impairment(s)' made by an individual's medical source and based on that source's own medical findings." Id. SSR 96-5p states that "[a] medical source statement is evidence that is submitted to SSA by an individual's medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s)." Adjudicators "must weigh medical source statements under the rules set out in 20 C.F.R. §§ 404.1527 and 416.927, providing appropriate explanations for accepting or rejecting such opinions." Id. at 34474.

The ALJ reviewed and summarized the medical evidence of record in his decision. (Tr. at 12-16.) The ALJ noted that Claimant had "limited treatment" which was inconsistent with his acknowledgment that he has had a medical card since March 2003. (Tr. at 16.) The ALJ found that based upon the "inconsistencies and unimpressive medical findings," Claimant's allegations were credible to the extent that he is limited to the exertional demands of light work, but is not precluded from all work. (Tr. at 16.)

The ALJ noted the opinions of the treating physicians, but did not give them significant weight because they were unsupported by the evidence of record. (Tr. at 16.) The ALJ noted the March 20, 2003 letter by Dr. Clinton Curtis, in which he opined that Claimant was "disabled for a period greater than 12 months" due to "his chronic ongoing medical condition." (Tr. at 165.) The ALJ afforded this opinion no significant weight because Dr. Curtis did not specify Claimant's "ongoing medical condition" or explain how it limited his ability to work. (Tr. at 16.) Additionally, Dr. Curtis's opinion is an opinion on the ultimate issue of disability, which is never entitled to significant weight regardless of its source. See 20 C.F.R. § 404.1527(e)(1)-(3); 416.927(e)(1)-(3) (2004) (stating that a statement by a medical source that you are "disabled" or "unable to work" is an opinion on an issue reserved to the Commissioner, the source of which is not entitled to any special significance).

With regard to Dr. Doyle's February 24, 2004, medical source statement, the ALJ reviewed Dr. Doyle's findings and found the opinion not supported by the evidence.[1] (Tr. at 16.) Dr. Doyle

---

[1] As the Commissioner points out, Dr. Doyle's form was completed by Nurse Scarborough, who is not an acceptable medical source under the Regulations. The Court notes that a nurse practitioner is not an "acceptable medical source" under the Regulations; rather, a nurse practitioner's opinion would be considered an opinion of an "other source" which may be used to show the severity of a claimant's impairment and how it affects his ability to work. See 20

opined that Claimant was able to lift/carry only 5-10 pounds occasionally; stand/walk for 2-3 hours in an eight-hour workday, 15 minutes without interruption; and sit for 2 hours in an eight-hour workday, 10-15 minutes without interruption. (Tr. at 166-67.) These findings were based upon Claimant's knee impairment and low back pain. (Tr. at 166-67.) Dr. Doyle opined that Claimant could never climb, stoop, crouch, kneel, or crawl, and could only occasionally balance. (Tr. at 167.) Reaching, handling, feeling, pushing, and pulling were affected by Claimant's hands going numb, and Dr. Doyle checked every environmental restriction on the list, indicating that Claimant should avoid heights, moving machinery, temperature extremes, chemicals, dust, noise, fumes, humidity, vibration, and "other," with no explanation of the "other." (Tr. at 168.)

The ALJ noted the findings of a consultative examination with Dr. Gobunsuy on July 8, 2003. (Tr. at 12.) Dr. Gobunsuy found that Claimant was able to walk on his toes and do heel-to-toe tandem, and could stand on one leg at a time. (Tr. at 12, 124.) Claimant was comfortable in supine and sitting positions and had no difficulty getting up from a sitting position or getting on the examination table. (Tr. at 123.) Claimant had symptoms of carpal tunnel syndrome, but he wrote his name and picked up a coin using the right hand with no difficulty. (Tr. at 124.) There was no tenderness, redness, warmth or swelling of the hands, and his grips were "decent." (Tr. at 124-25.) Claimant's back was tender and range of motion was "slightly affected." (Tr. at 124.) Dr. Gobunsuy opined that there was no evidence of end-stage liver disease. (Tr. at 124.)

The ALJ noted Claimant's treatment for liver disease, including a hospitalization from February 24, 2003, through February 28, 2003. (Tr. at 13.) The ALJ noted that Claimant had received treatment for alcoholism, but on September 25, 2003, declined alcohol abuse treatment. (Tr.

---

C.F.R. § 404.1513(d)(1) (2004).

at 13, 140.) He noted that treatment notes from May 2, 2003, showed Claimant to be more energetic. (Tr. at 13, 142.) With regard to Claimant's knee impairment, the ALJ noted that Claimant went to New River Health Association in January 2004 complaining of knee pain and that a January 22, 2004, MRI of the left knee showed prominent patellofemoral joint effusion and a tear involving the posterior horn of the lateral meniscus with questionable tear involving the posterior horn of the medial meniscus. (Tr. at 13, 164.)

Noting inconsistencies in the record, the ALJ found that Claimant's complaints of pain due to his liver disease were not reflected in the record, except for a complaint of occasional right upper quadrant pain. (Tr. at 15.) Despite Claimant's allegedly high levels of pain, he took only Naproxen for pain which helped "some" and used a heating pad on his knee. (Tr. at 16.) Additionally, as noted above, Claimant stated that he had a medical card since 2003, yet has sought limited treatment for his conditions. (Tr. at 16.) The ALJ noted Claimant's daily activities, which included helping his 80-year old father with food preparation and household chores; grocery shopping; and mowing. (Tr. at 177.) He was also able to use a treadmill. (Tr. at 189.)

The ALJ also reviewed the assessments of state agency physicians who reviewed the record. These physicians opined that Claimant was capable of performing light work with occasional postural limitations. (Tr. at 152-58, 131-38.) These physicians disagreed somewhat as to the manipulative and environmental limitations, but the ALJ ultimately determined that Claimant was limited to light work with a sit/stand option at will; he could occasionally climb, balance, stoop, kneel, crouch, and crawl; should avoid concentrated exposure to extreme cold, extreme heat, humidity, noise, vibration, and hazards; and experienced mild to moderate pain but could be attentive to and carry out assigned work tasks. (Tr. at 17.) The ALJ found that manipulative

limitations on handling, fingering, and feeling placed by the state agency physicians were not supported by the record, particularly by Dr. Gobunsuy's assessment. (Tr. at 17, 14.)

Based upon the ALJ's review and summary of the evidence, he concluded that the medical source statements of Dr. Doyle and Dr. Curtis were not supported by the evidence of record. Dr. Curtis's statement was essentially that Claimant was totally disabled, and Dr. Doyle limited Claimant to less than sedentary work. The ALJ determined that these opinions were not supported by the "unimpressive medical findings" and were inconsistent with the assessments of state agency physicians who reviewed the record. (Tr. at 16.) The ALJ's evaluation of these opinions and of the evidence of record was proper and supported by substantial evidence.

Based upon the foregoing, the ALJ properly concluded that the opinions of Claimant's treating physicians were not supported by the evidence of record. The ALJ made a proper determination of Claimant's residual functional capacity in accordance with the applicable law and Regulations. Accordingly, Claimant's argument is without merit.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the District Court confirm and accept the foregoing findings, **DENY** the Plaintiff's Motion for Judgment on the Pleadings, **GRANT** the Defendant's Motion for Judgment on the Pleadings, **AFFIRM** the final decision of the Commissioner and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, Chief United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation

within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Chief Judge Faber, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to counsel of record.

Date: May 4, 2005.

R. Clarke VanDervort
United States Magistrate Judge